UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JAMES D. CHENEVERT AND
CHARLES D. BISHOP, JR.

VERSUS

THE REDEMPTORISTS/DENVER
PROVINCE, ET AL.

CIVIL ACTION

NO. 09-473-JJB

**RULING ON MOTIONS TO DISMISS**

The matters before the Court are a motion to dismiss (doc. 61) filed by defendants The Redemptorists/Denver Province, the Redemptorists New Orleans Vice Province, and Rev. Thomas D. Picton, Jr., and his Predecessors and Successors as Provincial Superior of the Redemptorists/Denver Province (collectively "Church Defendants"), a motion to dismiss (doc. 64) filed by defendant Father Christopher Joseph Springer, and an amended motion to dismiss (doc. 67) filed by Fr. Springer. Plaintiffs filed oppositions. (Docs. 69 & 73.) Church Defendants filed a reply (doc. 72.) and Fr. Springer filed a reply (doc. 74). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. There is no need for oral argument. For the following reasons, the Church Defendants' motion is DENIED, in part, and GRANTED, in part; Fr. Springer's motion is DENIED, in part, and GRANTED, in part.

**Background**

In 1952 the Redemptorist Roman Catholic church ordained Fr. Springer a priest after the completion of his education and training. Fr. Springer served as a

1

priest throughout numerous Roman Catholic communities of the Redemptorist Fathers from 1954 through 1972. Plaintiffs allege that throughout that period Fr. Springer engaged in inappropriate sexual activities with male juveniles.[1]

In 1972 the Redemptorists placed Fr. Springer on leave and petitioned for his incardination in the Roman Catholic Church of the Diocese of Baton Rouge ("Diocese of Baton Rouge"). In connection with that petition, the Redemptorists issued a certificate of good standing and a recommendation to the Diocese of Baton Rouge. Fr. Springer became a priest in the Diocese of Baton Rouge in April 1973.

Plaintiffs, James D. Chenevert and Charles D. Bishop, Jr., attended church within the Diocese of Baton Rouge. They claim that Fr. Springer sexually abused them as juveniles "[d]uring the course of extending himself as a role model, holy priest and spiritual advisor whose incardination in the Diocese of Baton Rouge had been recommended, authorized, ordered and directed by the Redemptorists." Plaintiffs also claim that the Church Defendants knew or should have known of Fr. Springer's propensities but conspired to misrepresent and conceal such information.

Plaintiffs brought a number of allegations against Fr. Springer and the Church Defendants, all in connection to the harm suffered as a result of sexual abuse. The allegations against Fr. Springer include negligence, intentional

---

[1] These allegations are not at the center of this current suit, but relate to what the Church Defendants knew or should have known about Fr. Springer.

infliction of emotional distress, gross negligence, breach of fiduciary duty, fraud, and fraudulent concealment. The allegations against the Church Defendants include negligence, intentional infliction of emotional distress, negligent misrepresentation, breach of fiduciary duty, fraud, and fraudulent concealment arising from the certificate of good standing and recommendation, and vicarious liability for Fr. Springer's actions. Plaintiffs also plead entitlement to punitive and exemplary damages.

## Motion to Dismiss

Rule 12(b) provides for dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court should grant a motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

In reviewing the complaint, courts accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Courts do not, however, accept as true all legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a plaintiff must provide sufficient factual content for the court to reasonably infer that the plaintiff is entitled to relief based upon the

context of the case and the court's "judicial experience and common sense." *Id.* at 1949-50.

Courts, therefore, must first identify the conclusory allegations, which do not receive a presumption of truth, and then determine whether the remaining factual allegations plausibly give rise to an entitlement of relief. *Id.* at 1950.

## Analysis

*A. Are the Claims Prescribed?*

The parties agree that Louisiana's prescriptive laws apply to Plainitffs' claims. Under Louisiana law, the Court applies the prescriptive period that was in effect when the injury occurred. All actions giving rise to Plaintiff Bishop's claims occurred from 1978 to 1981, while the actions giving rise to Plaintiff Chenevert's claims occurred from 1974 to 1984.

The prescriptive period for such claims in Louisiana is one year. Prior to 1983 this prescriptive period ran against minors; article 3269 of the Louisiana Civil Code, which became effective in 1983, suspended prescription until a minor reached the age of majority. *See Hall v. Hall*, 516 So. 2d 119, 120 (La. 1987). Thus, Plaintiffs' claims arising before 1983, which are all of Bishop's claims and some of Chenevert's claims—are barred by prescription.

Chenevert, however, asserts claims originating after 1983; prescription on those claims did not begin running until he reached the age of majority. Depending on when Chenevert reached the age of majority, Chenevert had either three or ten years to file his claims. *See* La. Civ. Code Ann. art. 3496.1

(1988) (creating a three year prescriptive period for claims of abuse); La. Rev. Stat. Ann. § 9:2800.9(A) (1993) (creating a ten year prescriptive period for sexual abuse of a minor). Chenevert claims sexual abuse beginning in 1974, thus he must have reached the age of majority no later than 1992, giving him until 2002—under the ten year prescriptive period—to file his claims.[2] Because he did not bring these claims by 2002, his claims are prescribed.

   B. *Do the Claims Survive under* Contra Non Valentem?

   Plaintiffs argue that their claims survive prescription under the doctrine of *contra non valentem*. *Contra non valentem* suspends the prescriptive period in four situations, two of which Plaintiffs assert: (1) where the defendants have done some act effectually to prevent the plaintiffs from availing themselves of their cause of action; or, (2) where a cause of action is not known or reasonably knowable by the plaintiffs, even though their ignorance is not caused by the defendants. *Corsey v. State*, 375 So. 2d 1319, 1321 (La. 1979); *Steele v. Steele*, 98-693 (La. App. 5 Cir. 3/10/99); 732 So. 2d 546, 548. The former category arises when the plaintiff cannot enforce the cause of action because of some reason external to his own will. *Corsey*, 375 So. 2d at 1321. The latter, also known as the discovery rule, provides for commencement of the prescriptive period when the injured party discovered or should have discovered the facts

---

[2] Although the ten year prescriptive period did not become effective until 1993, a year after Chenevert must have reached the age of majority, the Court applies the ten year prescriptive period out of an abundance of caution.

upon which his cause of action is based. *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

In Louisiana, prescription beings to run when a plaintiff has actual or constructive notice of the alleged tortuous act. *Catrillo v. Stimulation Tech., Inc.*, 393 So. 2d 772, 774 (La. App. 4 Cir. 1980). When a plaintiff has enough notice to excite his attention and put him on guard to prompt further inquiry, then a plaintiff has constructive notice of everything to which notice might lead. *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (La. 1970). Although prescription does not begin running at the earliest and slightest indication that a plaintiff might have suffered a wrong, a plaintiff must "seek out those whom he believes may be responsible for a specific injury." *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987).

Plaintiffs argue that fraudulent concealment by the Church Defendants prevented Plaintiffs from knowing of their causes of action against the Church Defendants. While Plaintiffs point to a recently obtained affidavit as first revealing the bases for Plaintiffs' claims, the Court fails to understand how not having this affidavit prevented Plaintiffs from knowing that they had a cause of action in relation to the alleged sexual assault. Plaintiffs do not allege that the Church Defendants "misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by [Fr. Springer], or that it had not resulted in injury." *See Keely v. Marcantonio*, 187 F.3d 192, 201 (1st Cir. 1999)

(finding that the plaintiff's cause of action had accrued).[3]  Instead, under this theory, it appears that Plaintiffs' arguments are essentially that they did not know an additional theory of liability arising from the alleged sexual abuse.  *See id.*  If Plaintiffs did indeed have knowledge of the alleged abuse, they had constructive notice of possible liability on the part of the Church Defendants.  *See id.*; *Doe v. Archdiocese of Washington*, 689 A.2d 634, 645 (Md. Ct. Spec. App. 1997) (noting that a plaintiff who is sexually assaulted by a priest is on inquiry notice of his potential claims against the church).

Plaintiffs allege, however, that psychological incapacity due to repressed and suppressed memories prevented them from knowing of the abuse.[4]  Such repressed memories, if proven, would fulfill the final exception to *contra non valentem* and thus prevent prescription of Plaintiffs' claims arising from the sexual assault.  *See Doe v. Archdiocese of New Orleans, et al.*, 823 So. 2d 360, 366 (La. App. 4 Cir. 5/8/02) (finding that the existence of repressed memories created a factual issue necessitating a complete factual record before deciding the issue of prescription).

Accordingly, a factual issue exists as to whether Plaintiffs' suffered from repressed memories.  Determination of that issue will shed light on whether Plaintiffs had knowledge of the abuse, and therefore constructive notice of the

---

[3] *Keely* dealt with application of the fraudulent concealment tolling theory under Rhode Island law.  Accordingly, the Court cites it not as authority on Louisiana law, but as helpful reasoning in understanding when fraudulent concealment can prevent a cause of action from accruing.
[4] Amend. Compl. ¶ 71 (doc. 19).

Church Defendants' liability, at a time which would prescribe their claims. Therefore, Plaintiffs' claims must survive the motion to dismiss.

### C. Should the Court Take Judicial Notice of Plaintiffs' State Court Petitions?

Defendants request that this Court take Judicial Notice of "almost identical" petitions filed in the 19th Judicial District Court of Louisiana; Chenevert filed his petition on December 27, 2006, and Bishop filed his on October 26, 2006. Although these petitions are sealed, Defendants argue that the filings prove that Plaintiffs knew of their claims more than a year before filing the instant action. Because the petitions are sealed, however, any facts arising from them are not "capable of accurate and ready determination." Fed. R. Evid. 201. Thus, the Court declines to take judicial notice of the filings.[5]

### D. Did Plaintiffs Sufficiently Plead Punitive Damages?

Church Defendants argue, and Plaintiffs concede, that there is no statutory authority for punitive damages against them, as required under Louisiana law. See Int'l Havester Credit Corp. v. Seale, 518 So. 2d 1039, 1041 (La. 1988). Because the parties are in agreement, the Court dismisses that portion of the complaint.

Fr. Springer also argues that there is no statutory authority for punitive damages against him. Plaintiffs respond that they are entitled to exemplary damages "upon proof that the injuries on which the action is based were caused

---

[5] As an aside, the Court is not certain that taking judicial notice would aid Defendants, as prescription is interrupted by the filing of a suit in a court of competent jurisdiction. La. Civ. Code Ann. art. 3462.

8

by a wanton and reckless disregard for the rights and safety of the person through criminal sexual activity which occurred" while the victim was a minor. La. Civ. Code art. 2315.7. Because exemplary damages and punitive damages are synonymous terms, *see Vincent v. Morgan's La. & T.R. & S.S. Co.*, 74 So. 541, 545 (La. 1917), and any injuries based on sexual assault would constitute criminal sexual activity against a minor, the Court finds that Plaintiffs properly pleaded punitive damages against Fr. Springer.

    E.  *Did Plaintiffs' Sufficiently Plead Fraud and Fraudulent Concealment?*

    Defendants argue that Plaintiffs failed to sufficiently allege fraud or fraudulent concealment. Indeed, rule 9(b) of the Federal Rules of Civil Procedure requires heightened specificity when alleging fraud. Fed. R. Civ. Pro. 9(b); *see also Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). In the Fifth Circuit, that specificity requires identifying the fraudulent statements, the speaker, when and where the fraud occurred, and why the statements amounted to fraud. *ABS Arbitage Plaintiff's Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (citing *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997)).

    Plaintiffs allege that between 1952 and 1973, Church Defendants knew or should have known of sexual abuse committed by Fr. Springer; at the very least, they knew or should have known of the sexual abuse when he petitioned to join the Diocese of Baton Rouge. The fraud allegedly occurred in connection with this petition, when the Church Defendants issued a certificate of good standing. This petition and certificate of good standing allegedly amounted to fraudulent

representations that "Springer was a man of good moral character, fit to be a Roman Catholic Priest . . . who could be entrusted with the care, counseling, teaching and instruction of adolescent children." These allegations, although not a model of clarity, provide enough specifics to survive the motion to dismiss.

F. *Can Liability be Premised on Respondeat Superior?*

Church Defendants argue that they cannot be vicariously liable for Fr. Springer's actions under the theory of respondeat superior because at the time he allegedly committed these sexual assaults he was not an agent of the Church Defendants. As the complaint alleges, Fr. Springer left the auspices of the Church Defendants in 1972; his alleged sexual abuse did not begin until 1974. In Louisiana, "the employer will not be liable for the substandard conduct of the employee unless the latter can be fairly said to be within the course and scope of employment with the former." *Brasseaux v. Town of Mamou*, 99 -1584 (La. 01/19/00); 752 So. 2d 815, 820. Because at the time of the alleged sexual assault, Fr. Springer had already been dispensed from the Redemptorist Fathers and incardinated in the Diocese of Baton Rouge, Plaintiffs may not proceed against the Church Defendants on a theory of respondeat superior.

G. *Is there a Fiduciary Duty?*

Plaintiffs claim that Fr. Springer and the Church Defendants violated a fiduciary duty that arose from their pastor-parishioner relationships. Although Louisiana courts have not recognized such a fiduciary relationship, neither have they specifically disallowed them. *See Tichenor v. Roman Catholic Church of the*

*Archdiocese of New Orleans*, 95-0930 (La. App. 4 Cir. 12/14/95); 665 So. 2d 1307, 1312 (refusing to address a breach of fiduciary duty claim because the plaintiff did not specifically plead it). It is clear, however, that Louisiana courts do not recognize a cause of action for clergy malpractice. *Id.; Roppolo v. Moore*, 644 So. 2d 206, 208 (La. App. 4 Cir. 1994) (writ denied).

Defendants argue, and this Court agrees, that a claim of breach of fiduciary duty raises the same concerns that have prevented Louisiana courts from recognizing clergy malpractice. "This is a secular court. If sexual or other conduct of a priest violates *secular* standards, e.g., child molestation, this Court will impose whatever civil or criminal secular sanctions may be appropriate. But this Court has no authority to determine or enforce standards of religious conduct and duty." *Roppolo*, 644 So. 2d at 208. Moreover, this Court agrees with those courts that have found that a claim for breach of fiduciary duty is "an elliptical way to state a clergy malpractice claim." *Dausch v. Rykse*, 52 F.3d 1425, 1429 (7th Cir. 1994); *see also Schmidt v. Bishop*, 779 F. Supp. 321, 326 (S.D.N.Y. 1991) (stating that the plaintiff's "fiduciary duty claim is merely another way of alleging that the defendant grossly abused his pastoral role, that is, that he engaged in malpractice").[6]

---

[6] The Court notes that there may be situations that do give rise to fiduciary relationships between a pastor and parishioner, such as counseling. *See* Lindsey Rosen, *In Bad Faith: Breach of Fiduciary Duty By the Clergy*, 71 Temp. L. Rev. 743, 744 (discussing the clergy-parishioner counseling relationship as imposing a duty to refrain from inappropriate behavior). Such a situation is not before this Court, nor have Louisiana courts addressed it.

Accordingly, the Court refuses to recognize a claim under Louisiana law for breach of a fiduciary duty premised upon the pastor-parishioner relationship.

## Conclusion

The Court finds that although Plaintiffs' claims are prescribed, they may be subject to an exception under *contra non valentem*, and therefore must survive this motion to dismiss. The Court further finds that Plaintiffs have sufficiently pled fraud and fraudulent concealment. Regarding punitive damages, Plaintiffs have properly pled them against Fr. Springer, but not against the Church Defendants.

The Court further finds that because Fr. Springer was not an agent or employee of the Church Defendants when the alleged abuse occurred, Plaintiffs cannot proceed against the Church Defendants on a theory of respondeat superior. The Court further finds that Louisiana law does not recognize a cause of action for breach of fiduciary duty arising out of the pastor-parishioner relationship.

Accordingly, the Church Defendants' motion to dismiss (doc. 64) is GRANTED, in part, and DENIED, in part. Additionally, Fr. Springer's motion to dismiss (doc. 64) and amended motion to dismiss (doc. 67) are GRANTED, in part, and DENIED, in part.

Signed in Baton Rouge, Louisiana, on April 20th, 2010.

JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA